## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| STEVAN SIMIJANOVIC, individually and on behalf of all others similarly situated, | 2:23-cv-12882 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V., | Jury Trial Demanded |
| Defendant | |

Plaintiff Stevan Simijanovic ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.   DANGERS OF CLIMATE CHANGE

1.   World temperature has risen by 1.1 ℃ since 1850 due to greenhouse gases such as carbon dioxide ($CO2$) from burning fossil fuels.

2.   This climate change has caused global devastation, such as harm to health, economies, and food and water supply.

3.   196 countries entered the 2015 Paris Climate Accords and adopted the recommendations of the Intergovernmental Panel on Climate Change ("IPCC") to limit climate change to an increase of 1.5 ℃ and reach net zero emissions by 2050.

4.   Expert reports indicate these steps will result in several hundred million fewer people being exposed to climate-related risks and susceptible to poverty.

## II.   VOLUNTARY ENVIRONEMNTAL INITIATIVES

5.      Legislative attempts to tackle climate change have repeatedly failed.

6.      In this void, corporate social responsibility codes have developed to show the public businesses are committed to protecting the environment.

7.      These voluntary environmental initiatives go beyond legal requirements.

8.      The Director of President Biden's National Economic Council stated that a transition away from fossil fuels "will only happen if the American private sector, [] [is] an inextricable part of that process."

9.      Reasons that companies adopt voluntary environmental action include a shift away from profit-maximizing to social welfare maximizing behavior, conforming to pressures from community groups, stockholders, environmental organizations and industry members.[1]

## III.  KLM VOLUNTARILY COMMITS TO ENVIRONMENTAL GOALS

10.     Koninklijke Luchtvaart Maatschappij N.V. ("Defendant" or "KLM") operates KLM Royal Dutch Airlines, based in the Netherlands.

11.     The Netherlands is uniquely vulnerable to climate change because much of it is below sea level.

12.     KLM tells customers of its commitment to "Fly Responsibly" and that it

---

[1] Paton, Bruce. "Voluntary environmental initiatives and sustainable industry."; Baumeister, Stefan. "Mitigating the climate change impacts of aviation through behavioural change." Transportation Research Procedia 48 (2020): 2006-2017.

"recognize[s] the urgent need to limit global warming, and [] ha[s] committed to the targets defined in the Paris Climate Agreement."



13.   KLM highlights how it promotes "Sustainability."



14.   The claims to "Fly Responsibly" and "Sustainability" are "General environmental benefit claims" which misrepresent, directly and by implication, the environmental impact of flying on KLM. 16 C.F.R. § 260.4(a).

15.   These claims are not qualified and result in deception about the nature of

the environmental benefits asserted. 16 C.F.R. § 260.4(c).

16.    These claims lack qualifying language which makes clear the limitations of its actions to support them.

17.    KLM's Climate Action Plan projections "are based on a well below 2 ºC scenario" by 2050, which is inconsistent with the Paris Agreement to prevent world temperature rising above 1.5 ºC.

18.    KLM contributes to the current trajectory in which there is a high probability that global warming will exceed 1.5 ºC by 2050.

19.    The targets KLM is using to try and limit its carbon emissions are outdated, and using this as a goal is insufficient to curb dangerous global warming.

20.    Though KLM attempts to specify its environmental initiatives with facts and figures, the result is consumers being misled.



21.    These include reductions in CO2 emissions, the amount of water saved,

and the use of sustainable biofuels.

22.   For example, that 561 flights were "partly performed with sustainable biojet fuel" is misleading because this is less than 0.2% of all fuel used.

23.   KLM represents that it is "Flying on biofuel" on the exterior of its planes.



24.   KLM claims that "Renewable sources such as used cooking oil can significantly reduce CO2 emissions in aviation" to "Mak[e] flying more sustainable."



25.   KLM's claims about its use of biofuels are misleading because they imply that its benefits are significant when they are negligible. 16 C.F.R. § 260.4(c).

26.   First, its emphasis on biofuels is deceptive because almost all its fuel used is not from biofuels. 16 C.F.R. § 260.15(c).

27.   According to the IPCC, sustainable fuels are unlikely to be used on a commercial scale any time soon.

28.   The quantity of biofuels used by KLM cannot make a meaningful and realistic contribution to $CO_2$ neutrality in accordance with the objectives of the Paris Agreement.

29.   Second, KLM does not specify prominently the percentage of biofuel used as part of its total fuel usage, which would be less than 0.2%. 16 C.F.R. § 260.15(c).

30.   Third, KLM's claims about biofuel are misleading because they are unqualified, and almost the entire amount of its energy used comes from fossil fuels. 16 C.F.R. § 260.15(a).

31.   It is likely KLM would use the same amount of sustainable fuel even if people did not pay extra for it.

## IV.  CARBON OFFSETTING PROGRAM MISLEADING

32.  KLM promotes its CO2ZERO program to reduce or offset the environmental impact of its flights.



33.   This involves carbon offsetting, which in theory reduces or removes carbon dioxide from the atmosphere by planting and growing trees which absorb carbon dioxide.

34.   KLM tells fliers that "CO2ZERO enables you to compensate for your share of the CO2 emitted during our flight."



35.   KLM's CO2ZERO program allows fliers to purchase carbon credits

through paying money to reforestation programs and sustainable fuels.



36.    KLM's description of its operations as "CO2 neutral" and "CO2ZERO"
are misleading.

37.    KLM has not used competent and reliable scientific and accounting
methods to properly quantify claimed emission reductions from its use of carbon
offsets, rendering these promotions misleading. 16 C.F.R. § 260.5(a).

38.    This is based on several factors.

39.    First, reforestation and planting trees are short-lived and unstable forms
of storing carbon dioxide.

40.    In contrast, carbon dioxide remains in the environment for a long time.

41.    Carbon dioxide never been used would be stored in the ground for
eternity.

42.   No credible evidence exists that purchasing carbon credits is equivalent to negating the environmental effects of flying.

43.   According to the European Aviation Safety Agency ("EASA"), the non-$CO_2$ effects from flying are three times greater than the warming effect of $CO_2$.

44.   This includes other greenhouse gases associated with flying like methane, nitrogen and condensation trails ("contrails") from aircraft.

45.   Second, carbon credits are appropriate only in the context of a "mitigation hierarchy" that recognizes the need to comprehensively and directly reduce emissions to meet "net zero" goals.

46.   KLM does not "clearly and prominently disclose if the carbon offset represents emission reductions that will not occur for two years or longer." 16 C.F.R. § 260.5(b).

47.   KLM's claims about its carbon offsetting are misleading because it would still be required to engage in reforestation programs to meet $CO_2$ reduction targets regardless of whether people purchased its carbon credits. 16 C.F.R. § 260.5(c).

## V.   CONCLUSION

48.   As a result of the false and misleading representations and omissions about its environmental initiatives, flights on KLM cost more than on other airlines, higher than similar airline flights, represented in a non-misleading way, and higher

than they would be sold for absent the misleading representations and omissions.

## JURISDICTION

49. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

50. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

51. Plaintiff is a citizen of Michigan.

52. Defendant is a Dutch corporation headquartered in the Netherlands.

53. Defendant's principal place of business in the United States is in New York.

54. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

55. The Court has jurisdiction over Defendant because it transacts business within Michigan through its codesharing arrangements with airlines such as Delta.

56. A codeshare flight is an agreement between airlines to sell seats on each other's flights.

57. Only one carrier operates the flight, but the other airlines marketing the flight can add their own flight numbers for marketing purposes.

58. In 2009, the codesharing arrangement between Delta and KLM was estimated to generate over $12 billion annually, which has grown significantly.

59.   Delta and KLM share revenues and/or costs on codeshare flights, which means they essentially operate as one airline on certain routes.

60.   Both operate hubs at Amsterdam (AMS) airport, with Delta operating flights from there to the US, with KLM operating (some) flights to the US but more-so to other destinations Delta does not operate to.

61.   This codesharing allows KLM to sell flights to Michigan residents which are operated by Delta.

62.   On Defendant's website, it promotes flying from Detroit through its global network, which includes Delta.

63.   Defendant transacts business in Michigan through its codesharing arrangements with airlines like Delta, which results in splitting revenues and costs on such flights.

64.   Defendant has committed tortious acts within this State through the dissemination of its marketing and advertising materials described here in this State, and its sale of carbon offsets to citizens of this State, which is misleading to consumers in this State.

65.   Defendant has committed tortious acts outside this State by its dissemination of its marketing and advertising materials described here in a manner which causes injury to consumers within this State by misleading them as to environmental efforts with respect to climate change and greenhouse gas emissions,

by regularly doing or soliciting business, or engaging in other persistent courses of conduct to promote its environmental practices to consumers in this State, and/or derives substantial revenue from flights operated with its codeshare partners in this State and/or sale of carbon offsets in this State.

66. Defendant has committed tortious acts outside this State by dissemination of its marketing and advertising materials described here which causes injury to consumers within this State by misleading them as to environmental efforts with respect to climate change and greenhouse gas emissions, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to promote its environmental practices to consumers in this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

67. Venue is in this District with assignment to the Southern Division because a substantial part of the events or omissions giving rise to these claims occurred in Macomb County, which is where Plaintiff's causes of action accrued.

68. Venue is based on Plaintiff's residence in Macomb County, which is where his causes of action accrued, including his purchase of KLM flights either operated by KLM or a codeshare partner, based in part on its representations and omissions about its environmental efforts, and awareness those efforts were false

12

and misleading.

69.    Plaintiff purchased, paid money towards or for, used airline flights operated by KLM and/or its codeshare partners who sold KLM flights in reliance on the environmental claims identified here in Macomb County.

70.    Plaintiff first became aware KLM's environmental claims were false and/or misleading in Macomb County.

71.    Plaintiff resides in Macomb County.

## PARTIES

72.    Plaintiff Stevan Simijanovic is a citizen of Macomb County, Michigan.

73.    Defendant Koninklijke Luchtvaart Maatschappij N.V. is a Dutch corporation.

74.    Since the founding of the Netherlands, "settlers [] started pumping water to clear land for farms and houses," with "[n]o place in Europe [] under greater threat than this waterlogged country on [its] edge."

75.    Since "[m]uch of the nation sits below sea level and is gradually sinking … the prospect of rising tides and fiercer storms [brought by climate change]" is not a theoretical but an immediate danger.

76.    Plaintiff is concerned about effects of climate change.

77.    Plaintiff realizes that flying requires emission of carbon dioxide and chose KLM in part because of its commitments and actions to limit the effects of

climate change.

78.   Plaintiff paid money directly to KLM or its codeshare partners via purchase of flights, whether operated by KLM or its codeshare partners, between October 2019 and October 2023.

79.   These flights occurred in Michigan and/or the other United States, Europe and or other countries.

80.   Plaintiff is like most citizens who value the environment and are aware of what we can do to limit climate change.

81.   Plaintiff chose between KLM and other airlines which did not tout their environmental attributes.

82.   Plaintiff was aware of and relied on KLM's commitments to "Fly Responsibly" and its other environmental claims, such as its promotion of carbon credits through reforestation and biofuels.

83.   Plaintiff did not expect that these claims were false and misleading because it was not possible to fly responsibly, and the carbon offset programs were not designed to negate the environmental impact of flying.

84.   Plaintiff paid more for flying on KLM than he otherwise would have had he known its representations and omissions about its environmental efforts were false and misleading.

## CLASS ALLEGATIONS

85. Plaintiff seeks to represent the following class:

> All persons in the State of Michigan who purchased flights on KLM or via KLM through its codeshare partners in reliance on its environmental claims during the statutes of limitations for each cause of action alleged.

86. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

87. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

88. Plaintiff is an adequate representative because his interests do not conflict with other members.

89. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

90. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

91. The class is sufficiently numerous and likely includes thousands of people who have flown from Michigan having purchased flights via KLM but took flights operated by its codeshare partners.

92. Plaintiff's counsel is competent and experienced in complex class action

litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Michigan Consumer Protection Act ("MCPA"), MCL §
445.901, *et seq.*

93.  Plaintiff incorporates by reference paragraphs 1-48.

94.  The purpose of the MCPA is to protect consumers against unfair and deceptive practices.

95.  The MCPA was modeled on the Federal Trade Commission ("FTC") Act.

96.  The FTC enacted Guides and Trade Practice Rules for environmental marketing claims.

97.  KLM's representations and omissions are contrary to FTC rules for environmental marketing claims.

98.  KLM's representations and omissions are deceptive and misleading to consumers because they overstate its environmental efforts, among other things.

99.  Plaintiff believed that flying on KLM would be better for the environment based on its professed, broad declarations about its environmental efforts.

100. This includes its commitment to "Fly Responsibly," emphasis on "Sustainability," and the availability of purchasing carbon offsets for reforestation

and sustainable fuels.

101. Plaintiff paid money for or towards air travel on KLM, and he would not have or paid as much as he did, if he knew that its environmental claims were false and misleading.

102. Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading environmental claims it made, a deceptive practice under this State's consumer protection laws, by paying more for flights with KLM that were operated by KLM and/or its codeshare partners, than he otherwise would have.

103. Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for travel via KLM, either directly or with its codeshare partners, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

104. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

## COUNT II
### Fraud

105. Plaintiff incorporates by reference paragraphs 1-48.

106. Plaintiff satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

107. WHO: Defendant, KLM, made material misrepresentations and/or

omissions of fact in its advertising and marketing of its environmental initiatives.

108. WHAT: Defendant's conduct was and continues to be fraudulent because it deceives consumers into believing that air travel can be sustainable, flying can be responsible, carbon offsets can be used to negate the environmental impact of flying and sustainable biofuels were a significant portion of its fuel usage.

109. Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

110. Upon information and belief, Defendant conducted or relied on research about consumer purchasing habits.

111. Defendant knew or should have known that almost all consumers want companies to be responsible stewards of the planet and to minimize their contributions to climate change.

112. Defendant highlighted these attributes in its marketing materials presented to Plaintiff and consumers.

113. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

114. Yet, Defendant has represented and/or continues to represent that flying can be sustainable and that its environmental initiatives such as carbon offsets can negate the detrimental impact of flying.

115. WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, continuously throughout the applicable class period and/or through the filing of this Complaint.

116. WHERE: Defendant's material misrepresentations and omissions, that that flying can be sustainable and its environmental initiatives such as carbon offsets can negate the detrimental impact of flying, were made in its advertising and marketing, at the checkout screens of the flight purchasing process, and online, which all or most consumers buying would inevitably see and take notice of.

117. HOW: Defendant made written and/or visual misrepresentations and omissions in its advertising and marketing about how flying can be sustainable and its environmental initiatives such as carbon offsets can negate the detrimental impact of flying even though this was false and misleading.

118. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before paying money for or towards flights on KLM.

119. WHY: Defendant misrepresented its environmental commitments and ability to reduce greenhouse gas emissions for the express purpose of inducing Plaintiff and class members to buy flights on KLM at a substantial price premium, in part based on consumer demand for companies which act responsibly towards the environment and are doing their part to combat climate change.

120. As such, Defendant profited by selling airline tickets to consumers throughout this State.

121. the misrepresented Product to thousands of consumers throughout this State.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 13, 2023

Respectfully submitted,

/s/  Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates, P.C.

*Counsel for Plaintiff*