# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| STEVAN SIMIJANOVIC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>KONINKLIJKE LUCHTVAART MAATSCHAPPIJ N.V.,<br><br>Defendant | 5:23-cv-12882-JEL-EAS<br><br>First Amended<br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Stevan Simijanovic ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:[1]

## I.  DANGERS OF CLIMATE CHANGE

1. World temperature has risen by 1.1 ºC since 1850 due to greenhouse gases such as carbon dioxide (CO2) from burning fossil fuels.

2. This climate change has caused global devastation, such as harm to health, economies, and food and water supply.

3. President Biden has even called climate change "an existential threat."

4. 196 countries entered the 2015 Paris Climate Accords and adopted the recommendations of the Intergovernmental Panel on Climate Change ("IPCC") to

---

[1] Filed pursuant to Fed. R. Civ. P. 11(c)(2).

limit climate change to an increase of 1.5 ºC and reach net zero emissions by 2050.

5. Expert reports indicate these steps will result in several hundred million fewer people being exposed to climate-related risks and susceptible to poverty.

## II. VOLUNTARY ENVIRONEMNTAL INITIATIVES

6. Despite lofty government goals to address climate change, legislative and other attempts to tackle this issue repeatedly failed.

7. In this void, large companies have adopted social responsibility codes to show the public they are committed to protecting the environment.

8. Reasons that companies adopt this type of voluntary environmental action include (1) a shift away from profit-maximizing to social welfare maximizing behavior, (2) conforming to pressures from community groups, stockholders, environmental organizations and industry members, and (3) benefits derived from positive publicity.[2]

9. These voluntary environmental initiatives go beyond legal requirements.

10. The Director of President Biden's National Economic Council stated that transitioning from fossil fuels "will only happen if the American private sector, [] [is] an inextricable part of that process."

11. According to a study by the Yale Program on Climate Change

---

[2] Paton, Bruce. "Voluntary environmental initiatives and sustainable industry."; Baumeister, Stefan. "Mitigating the climate change impacts of aviation through behavioural change." Transportation Research Procedia 48 (2020): 2006-2017.

Communication, "millions of Americans are willing to 'vote with their dollars' to reward companies taking climate action and punish companies blocking action."

12. 80% of the public consider it very important or a top priority for companies to take responsibility for climate action.

13. A survey by Oliver Wyman concluded that most consumers believe that companies should make commitments to reduce their carbon footprints and become net-zero emitters, which would affect where they buy goods and services.

14. More than two-thirds of travelers want to make greater efforts at traveling sustainably.

15. Over half of travelers are influenced by recent news about climate change to make more sustainable travel choices.

### III. KLM VOLUNTARILY COMMITS TO ENVIRONMENTAL GOALS

16. Koninklijke Luchtvaart Maatschappij N.V. ("Defendant" or "KLM") operates KLM Royal Dutch Airlines and Air France, based in the Netherlands.

17. The Netherlands is uniquely vulnerable to climate change because much of it is below sea level.

18. KLM tells customers of its commitment to "Fly Responsibly" and that it "recognize[s] the urgent need to limit global warming, and [] ha[s] committed to the targets defined in the Paris Climate Agreement."

3



19. KLM highlights how it promotes "Sustainability."



20. These initiatives generate positive publicity, and drive overall awareness for its brand among the flying public.

21. Further, these efforts contribute to investor confidence, thereby boosting financial stability.

22. Defendant's claims to "Fly Responsibly" and "Sustainability" are "General environmental benefit claims" which misrepresent, directly and by

4

implication, the environmental impact of flying on KLM. 16 C.F.R. § 260.4(a).

23. These claims are not qualified and result in deception about the nature of the environmental benefits asserted. 16 C.F.R. § 260.4(c).

24. These claims lack qualifying language which makes clear the limitations of Defendant's actions to support them.

25. KLM's Climate Action Plan projections "are based on a well below 2 ºC scenario" by 2050, which is inconsistent with the Paris Agreement to prevent world temperature rising above 1.5 ºC.

26. KLM contributes to the current trajectory in which there is a high probability that global warming will exceed 1.5 ºC by 2050.

27. The targets KLM is using to try and limit its carbon emissions are outdated, and using this as a goal is insufficient to curb dangerous global warming.

28. Though KLM attempts to specify its environmental initiatives with facts and figures, the result is consumers being misled.



29. These include reductions in CO2 emissions, the amount of water saved, and the use of sustainable biofuels.

30. For example, that 561 flights were "partly performed with sustainable biojet fuel" is misleading because this is less than 0.2% of all fuel used.

31. KLM represents that it is "Flying on biofuel" on the exterior of its planes.



32. KLM's claims about its use of biofuels are misleading because they imply that its benefits are significant when they are negligible. 16 C.F.R. § 260.4(c).

6

33. First, its emphasis on biofuels is deceptive because almost all its fuel used is not from biofuels. 16 C.F.R. § 260.15(c).

34. According to the IPCC, sustainable fuels are unlikely to be used on a commercial scale any time soon.

35. The quantity of biofuels used by KLM cannot make a meaningful and realistic contribution to CO2 neutrality in accordance with the objectives of the Paris Agreement.

36. Second, KLM does not specify prominently the percentage of biofuel used as part of its total fuel usage, which is estimated at less than 0.2%. 16 C.F.R. § 260.15(c).

37. Third, KLM's claims about biofuel are misleading because they are unqualified, and almost the entire amount of its energy used comes from fossil fuels. 16 C.F.R. § 260.15(a).

**IV. CONCLUSION**

38. As a result of the false and misleading representations and omissions about its environmental initiatives, flights on KLM cost more than on other airlines, higher than similar airline flights, represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

**JURISDICTION**

39. Jurisdiction is based on the Class Action Fairness Act of 2005

("CAFA"). 28 U.S.C. § 1332(d)(2).

40. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

41. Plaintiff is a citizen of Michigan.

42. Defendant is a Dutch corporation headquartered in the Netherlands.

43. Defendant's principal place of business in the United States is in New York.

44. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

45. The Court has jurisdiction over Defendant because it transacts business within Michigan through its codesharing arrangements with airlines such as Delta.

46. A codeshare flight is an agreement between airlines to sell seats on each other's flights.

47. Only one carrier operates the flight, but the other airlines marketing the flight can add their own flight numbers for marketing purposes.

48. In 2009, the codesharing arrangement between Delta and KLM was estimated to generate over $12 billion annually, which has grown significantly.

49. Delta and KLM share revenues and/or costs on codeshare flights, which means they essentially operate as one airline on certain routes.

50. Both operate hubs at Amsterdam (AMS) airport, with Delta operating

8

flights from there to the US, with KLM operating (some) flights to the US but more-so to other destinations Delta does not operate to.

51. This codesharing allows KLM to sell flights to Michigan residents which are operated by Delta.

52. On Defendant's website, it promotes flying from Detroit through its global network, which includes Delta.

53. Defendant transacts business in Michigan through its codesharing arrangements with airlines like Delta, which results in splitting revenues and costs on such flights.

54. Defendant has committed tortious acts within this State through the dissemination of its marketing and advertising materials described here in this State, which is misleading to consumers in this State.

55. Defendant has committed tortious acts outside this State by its dissemination of its marketing and advertising materials described here in a manner which causes injury to consumers within this State by misleading them as to environmental efforts with respect to climate change and greenhouse gas emissions, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to promote its environmental practices to consumers in this State, and/or derives substantial revenue from flights operated with its codeshare partners in this State.

56. Defendant has committed tortious acts outside this State by dissemination of its marketing and advertising materials described here which causes injury to consumers within this State by misleading them as to environmental efforts with respect to climate change and greenhouse gas emissions, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to promote its environmental practices to consumers in this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

## VENUE

57. Venue is in this District with assignment to the Southern Division because a substantial part of the events or omissions giving rise to these claims occurred in Macomb County, which is where Plaintiff's causes of action accrued.

58. Venue is based on Plaintiff's residence in Macomb County, which is where his causes of action accrued, including his purchase or payment of money towards or for, KLM flights either operated by KLM or a codeshare partner, based in part on its representations and omissions about its environmental efforts, and awareness those efforts were false and misleading.

59. Plaintiff purchased, paid money towards or for, used airline flights operated by KLM and/or its codeshare partners who sold KLM flights in reliance on the environmental claims identified here in Macomb County.

60. Plaintiff first became aware KLM's environmental claims were false and/or misleading in Macomb County.

61. Plaintiff resides in Macomb County.

## PARTIES

62. Plaintiff Stevan Simijanovic is a citizen of Macomb County, Michigan.

63. Defendant Koninklijke Luchtvaart Maatschappij N.V. is a Dutch corporation.

64. Since the founding of the Netherlands, "settlers [] started pumping water to clear land for farms and houses," with "[n]o place in Europe [] under greater threat than this waterlogged country on [its] edge."

65. Since "[m]uch of the nation sits below sea level and is gradually sinking … the prospect of rising tides and fiercer storms [brought by climate change]" is not a theoretical but an immediate danger.

66. Plaintiff is concerned about effects of climate change.

67. Plaintiff tries to be aware of environmental efforts by companies to reduce greenhouse gas emissions and be responsive to the threat of climate change.

68. Plaintiff realizes that flying requires emission of carbon dioxide and chose KLM in part because of its environmental commitments and actions.

69. Plaintiff is like most citizens who value the environment and wants to make choices which result in limiting climate change and patronize companies

11

which are responsible and transparent about their commitment and efforts to the environment.

70. Plaintiff was aware of and relied on KLM's commitments to "Fly Responsibly" and/or its other environmental claims.

71. Plaintiff did not expect that these claims were false and misleading because it was not possible to fly responsibly and sustainably.

72. Plaintiff believed that flying on KLM would be better for the environment based on its environmental claims and/or its emphasis on energy sources which were not fossil fuels.

73. Plaintiff did not expect that these claims were false and misleading because he was unaware of the extent that it was not possible to fly responsibly and sustainably.

74. Plaintiff did not know that the use of biofuel was de minimis relative to traditional fossil fuels, notwithstanding that such fuels are responsible for emissions and other detrimental climate effects.

75. Plaintiff purchased flights on KLM by paying money directly to KLM, its codeshare partners via purchase of flights, or through other entities, whether such flights were operated by KLM or its codeshare partners, between October 2019 and October 2023.

76. These flights occurred in Michigan and/or the other United States,

Europe and/or other countries.

77. Plaintiff chose between KLM and other airlines which did not tout their environmental attributes.

78. Plaintiff would not have chosen to fly on KLM or would have paid less money for flying on KLM, had he known its representations and omissions about its environmental efforts were false and misleading.

## CLASS ALLEGATIONS

79. Plaintiff seeks to represent the following class:

> All persons in Michigan who purchased or paid money towards, or for, flights on KLM or via KLM through its codeshare partners in reliance on its environmental claims during the statutes of limitations for each cause of action alleged.

80. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

81. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

82. Plaintiff is an adequate representative because his interests do not conflict with other members.

83. No individual inquiry is necessary since the focus is only on Defendant's

13

practices and the class is definable and ascertainable.

84. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

85. The class is sufficiently numerous and likely includes thousands of people who have flown from Michigan having purchased flights via KLM but took flights operated by its codeshare partners.

86. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
Michigan Consumer Protection Act ("MCPA"), MCL § 445.901, *et seq*.

87. Plaintiff incorporates by reference paragraphs 1-38.

88. The purpose of the MCPA is to protect consumers against unfair and deceptive practices.

89. The MCPA was modeled on the Federal Trade Commission ("FTC") Act.

90. The FTC enacted Guides and Trade Practice Rules for environmental marketing claims.

91. KLM's representations and omissions are contrary to FTC rules for environmental marketing claims.

92. KLM's representations and omissions are deceptive and misleading to consumers because they overstate its environmental efforts, among other things.

93. Defendant represented and omitted that its environmental initiatives had characteristics it did not have.

94. Defendant failed to state material facts about its environmental initiatives and the failure to do so deceived or tends to deceive consumers.

95. Plaintiff believed that flying on KLM would be better for the environment based on its professed, broad declarations about its environmental efforts.

96. This includes its commitment to "Fly Responsibly," emphasis on "Sustainability," and promotion of biofuels.

97. Plaintiff paid money for or towards air travel on KLM, and he would not have or paid as much as he did, if he knew that its environmental claims were false and misleading.

98. Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading environmental claims it made, a deceptive practice under this State's consumer protection laws, by paying more for flights with KLM or that were operated by KLM and/or its codeshare partners, than he otherwise would have.

99. Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for travel via KLM, either directly or with

15

its codeshare partners, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, and other advanced methodologies.

100. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   February 27, 2024

                                                   Respectfully submitted,

                                                   /s/  Spencer Sheehan
                                                 Sheehan & Associates, P.C.
                                                 60 Cuttermill Rd Ste 412
                                                 Great Neck NY 11021
                                                 (516) 268-7080
                                                 spencer@spencersheehan.com

                                               *Notice of Lead Counsel Designation:*

      *Lead Counsel for Plaintiff*

      Spencer Sheehan

      Sheehan & Associates, P.C.

      *Counsel for Plaintiff*

**Certificate of Service**

I certify that on February 27, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan